# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0122
Filed July 8, 2026

———————————

**In the Interest of E.A. and E.J., Minor Children,**

**G.A., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Brent Pattison, Judge.

———————————

**AFFIRMED**

———————————

Chira L. Corwin of Corwin Law Firm, Des Moines,
attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight,
Assistant Attorney General, attorneys for appellee State.

Bridget M. Bott of Bott Law Office, P.L.L.C., Norwalk,
attorney and guardian ad litem for minor children.

———————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Buller, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

A mother, Grace, challenges the order terminating her parental rights to her seven-year-old son, E.J., and two-year-old daughter, E.A. She now believes that the children could have been returned to her custody, termination was not in their best interests, and more time would enable family reunification. After a thorough review of the record, we cannot grant the relief she seeks.[1] As the juvenile court aptly observed: "After a lengthy child welfare case, both children need a safe and sober caregiver who can give them the permanency they deserve."

## I.     Facts and Prior Proceedings

This case opened in June 2023 when E.A.'s umbilical cord tested positive for cocaine and marijuana at her birth. Because Grace had been using drugs during her pregnancy, the Iowa Department of Health and Human Services removed both children from her custody, placing them in the home of their maternal grandmother. The court allowed Grace to stay there too, so long as the grandmother supervised her contact with E.A. and E.J.[2]

Soon Grace started substance-use treatment and did not contest the adjudication of E.A. and E.J. as children in need of assistance (CINA) in July. During the rest of 2023, Grace made some strides toward sobriety—though she continued to use marijuana. By spring 2024, the parties "were beginning

---

[1] We review termination proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly regarding credibility determinations." *Id.*

[2] From the start, the department harbored concerns that Grace had unsupervised contact with the children. And at the termination hearing, the guardian ad litem (GAL) continued to worry about the grandmother's "ability to set boundaries with Grace long-term."

to think about what safe case closure could look like" for this family. But in July and September 2024, Grace again tested positive for cocaine.[3]

After the second positive drug test, Grace left the state without letting the department know her whereabouts. She reengaged in treatment later that fall but had no in-person contact with the children from September 2024 until July 2025. Her only interactions with E.A. and E.J. were occasional video calls arranged through the grandmother.

The State petitioned for termination of parental rights in February 2025.[4] But the trial was pushed back until December so that the department could obtain an ICPC home study for E.J.'s father, who lived in Kentucky. That study, completed in the fall, supported placing E.J with his father.

Meanwhile, Grace had her third child in June 2025.[5] That child also tested positive for marijuana at birth. Grace testified that she was "super sick" during her pregnancy and smoked marijuana to help with her appetite. Rather than removing the infant from Grace's custody, the department started voluntary services. In August, Grace asked to resume in-person interactions with E.A. and E.J., but the department did not recommend it. Grace then sought visitation by moving for reasonable efforts. The juvenile court denied her motion, reasoning: "It is . . . more than reasonable to not

---

[3] The September test was also positive for methamphetamine. Grace insisted at the termination trial that she "never, ever touched" that drug. But during a September 2025 substance-use evaluation she "reported to using meth three times in her life."

[4] The State sought to terminate Grace's parental rights to the two children as well as the rights of the fathers of E.J. and E.A. The court terminated the rights of E.A.'s father, but he does not appeal.

[5] This termination case does not involve that child.

initiate supervised, in-person visitation at a time when Grace has been absent for so long (by her own choice) and when a TPR hearing is looming."

Then in November 2025, about a month before the termination trial for the two older children, the police responded to a domestic violence call at Grace's apartment. The father of her five-month-old child had assaulted her while she was holding that infant. Grace acknowledged striking the father in return—their infant still in her arms. Grace had a no-contact order at the time of the termination trial.

At the termination trial, Grace did not ask to resume custody of E.A. and E.J. immediately; she wanted them to stay with her mother. In a frank exchange with the assistant county attorney, Grace admitted she was "not in a position today to have them placed" with her. Grace then asked for more time to reunify with E.A. and E.J.:

> I'm asking the court to keep my kids where they are and not at the same time do anything with my parental rights. I just need to get back on my own two feet, and I'm fully capable of taking care of my kids. All I've ever done was take care of my kids, so that's what I would be asking.

In the alternative, Grace sought to create a guardianship for the children with their grandmother. The juvenile court declined, finding "too much potential for conflict within the family." Instead, the court terminated Grace's parental rights under Iowa Code section 232.116(1) (2026), paragraph (f) as to E.J. and paragraph (h) as to E.A.[6]

She now appeals.

---

[6] The State also petitioned for termination under paragraphs (b), (e), and (*l*), but the juvenile court found that the State did not meet its burden of proof under those alternative grounds.

## II.    Discussion

Termination cases involve three steps. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). One: the State must prove a basis for termination under Iowa Code section 232.116(1). *Id.* Two: the State must show terminating the parent's rights is in the children's best interests under section 232.116(2). *Id.* Three: a parent may show exceptions to termination under section 232.116(3). *Id.* We only address those steps that the parent disputes. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Grace contests the State's proof for the first two steps. She mentions the third step in passing but does not develop a full-blown argument that any exception under section 232.116(3) should preclude termination.[7] She also asks for six-month delay in permanency.[8] We will discuss each claim in turn.

---

[7] Even had she preserved error, the exceptions to termination "are permissive, not mandatory." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Grace asserts: "In the case at hand, both children are with family. A guardianship or bridge order could be utilized rather than termination of parental rights." But Grace does not show that the children were in the "legal custody" of relatives. *See* Iowa Code § 232.116(3)(a); *In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021) (distinguishing relative placement from "legal custody"). Neither does she meet her burden to show that her bond with the children requires preservation of their legal relationship. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).

[8] The juvenile court also considered and rejected Grace's suggestion that it establish a guardianship with the grandmother. The grandmother is a licensed foster parent and has been caring for the children for most of the proceedings. The department plans for her to adopt E.A. But we agree with the juvenile court that a guardianship would not serve the children's best interests for the same reasons we explain below for declining to extend permanency.

### A. Statutory Grounds

Grace argues that the juvenile court wrongly decided that the State offered clear and convincing evidence that E.A. and E.J. could not be returned to her custody. She highlights the department's decision to leave the new baby in her care: "If there were concerns about Grace being able to properly care for an infant or that she was using illegal substances, surely the State would have stepped in for Court oversight."[9] In her view, "If a fragile infant can remain in Grace's home, two older children, who have some ability to self-protect, surely can reside in the home."

Grace's argument goes to the common final element of paragraphs (f) and (h), requiring clear and convincing evidence that the child cannot be returned to parental custody at the time of the termination hearing as provided in section 232.102. *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (finding "at the present time" means the date of the termination hearing).

Trouble is, she did not contest that element at trial. Rather, Grace admitted not yet being "in a stable spot" to resume custody. "This waives her claim on appeal." *In re T.A.*, No. 26-0195, 2026 WL 1021062, at *2 (Iowa Ct. App. Apr. 15, 2026). And even if she did not waive error, the record supports termination given Grace's continued struggles with substance use, her failure to follow through on department recommendations for mental-health treatment, her exposure of the third child to domestic violence, and

---

[9] Our record does not show whether Grace has successfully navigated the voluntary services offered by the department for parenting the new baby. But the court noted that the new baby "was exposed to illegal substances *in utero*. And a recent incident of domestic violence, which the new baby was present during, has led to questions about whether her new baby is safe in her custody."

her lack of communication with the department about her whereabouts and housing for a large part of the case.

## B. Best Interests

The mother also contests whether termination was in the children's best interests. *See* Iowa Code § 232.116(2). She notes that E.J.'s father is being afforded more time to resume custody, so the department will remain involved in the case. She also argues that separating the siblings by moving E.J. to his father's home in Kentucky is not in their best interests.

The juvenile court recognized Grace's "reasonable concerns" about E.J. and E.A. "having different long-term plans." But the court concluded that it could not "prioritize their sibling relationship over [the father's] constitutional right to parent his child." The court also noted that the maternal grandmother remained the concurrent plan for E.J. if there are problems with his care in Kentucky.

In our de novo review, we reach the same conclusion as the juvenile court on best interests. While separating, no doubt, will be difficult for E.J. and E.A., the preference to keep siblings together is not absolute. *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). Despite the brother-sister bond, termination of the mother's parental rights remains in their best interests.

In assessing best interests, the children's safety is our top priority; then we consider the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional condition and needs. *See In re A.B.*, 956 N.W.2d at 169 (discussing Iowa Code § 232.116(2)). The long-term security of both children is best served by finding permanent homes with stable caregivers.

## C. Delayed Permanency

Finally, Grace requests more time to work toward reunification. *See* Iowa Code § 232.117(5) (permitting court to deny termination and enter a permanency order under section 232.104). But to continue placement for six months, section 232.104(2)(b) requires the court to decide "the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). We cannot make that finding here.

Grace contends that "if she were given six more months she could easily have the children safely returned to her care." Her contention is overly optimistic. True, the juvenile court was "tempted" by the idea of a six-month extension. But the court decided against delaying permanency explaining:

> [T]his case has been open for over two years—and we have been in this position before. Despite numerous attempts at treatment, Grace has not been able to find recovery and sobriety for any meaningful period of time. And instead of doubling down on treatment after relapses, she has often denied use, quit treatment, and left town. The court cannot find that delaying permanency another six months will lead to the children returning to her care.

Like the juvenile court, we find Grace's track record weighs against extending the uncertainty for these children.

**AFFIRMED.**